UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JESSICA JOYCE WOODS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Docket no. 06-cv-171-P-S |
| | ) |
| YORK COUNTY et al., | ) |
| | ) |
| | ) |
| Defendants. | ) |

**ORDER ON MOTION FOR SUMMARY JUDGMENT**

Before the Court is the Motion for Judgment on the Pleadings and for Summary Judgment by Defendants York County, Phillip Cote and Michael Vitiello (Docket #s 17 & 19).

Defendants' Motion for Judgment on the Pleadings seeks dismissal of Counts I & VI of the Complaint. These counts assert claims against Quinton Pray. As the docket indicates, Plaintiff has been unable to complete service on this defendant. Thus, in response to this portion of the Defendants' Motion, Plaintiff indicates she has no objection to dismissal of these claims without prejudice. Therefore, Defendants' Motion for Judgment (Docket # 19) is hereby GRANTED and Counts I & VI are dismissed without prejudice.

As explained herein, the Court also GRANTS Defendants' Motion for Summary Judgment (Docket # 17).

**I.     STANDARD OF REVIEW FOR SUMMARY JUDGMENT**

Generally, a party is entitled to summary judgment if, on the record before the Court, it appears "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

1

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A "material fact" is one that has "the potential to affect the outcome of the suit under the applicable law." Nereida-Gonzalez v. Tirado-Delgado, 990 F.2d 701, 703 (1st Cir. 1993).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). In determining whether this burden is met, the Court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. Santoni v. Potter, 369 F.3d 594, 598 (1st Cir. 2004). Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmoving party must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." Triangle Trading Co. v. Robroy Indus., Inc., 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); Fed. R. Civ. P. 56(e). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." In re Spigel, 260 F.3d 27, 31 (1st Cir. 2001) (citation and internal punctuation omitted).

With this standard in mind, the Court proceeds to lay out the factual narrative presented via the parties' statements of material fact.

## II.    FACTUAL BACKGROUND

The claims in this case all stem from the actions of Quinton Pray while he was employed as a corrections officer at the York County Jail.    Corrections Officer Pray was employed by the York County Jail from approximately July 29, 2002 until the time of his voluntary resignation on August 27, 2004.  In connection with his initial hiring, Pray received training at

the Maine Criminal Justice Academy and became certified as a corrections officer. During his employment, Pray continued to receive in-service training. Pray's training included sexual harassment training as well as training on all of the procedures and policies contained in the York County Sheriff's Manual of Policies and Procedures. Pray's training explicitly covered the fact that having sexual relationships with inmates, consensual or otherwise, was prohibited and illegal.

From July 2004 until late August 2004, Plaintiff Jessica Woods ("Woods") was an inmate at the York County Jail. During this period of incarceration, Woods was twice sexually assaulted by Officer Pray.[1] The first assault occurred on August 11, 2004. This August 11th incident occurred when Pray removed Woods from her cell at night after lockdown and allowed Woods to sit with him behind a guard's desk. While they were behind the desk (and outside the view of security cameras), Pray gave Woods a soda and proceeded to kiss her and touch her inner thigh through her clothes.

Four incident reports were filed by other corrections officers who witnessed Officer Pray take Woods out of her cell on August 11, 2004. These four reports described Officer Pray's improper conduct as simply having an inmate out of her cell at an improper time and failing to wear the complete corrections officer uniform. None of the reports contained allegations of sexual assault or improper physical contact between Pray and Woods. On August 12, 2004, Captain John Agis notified both the Jail Administrator Michael Vitiello, and David Dumond, an internal affairs investigator, of the four incident reports. Vitiello and Dumond both notified Sheriff Cote of the incident reports against Pray on or around August 12, 2004. Cote then

---

[1] Although not relevant to the issues now before the Court, Woods also testified at her deposition that Pray kissed her after bringing her a piece of cake during a previous stay at the "old" York County Jail. This incident was not the subject of any incident reports or investigation as it came to light for the very first time at Plaintiff's deposition.

initiated an internal affairs investigation and assigned Dumond and Alan Whitmore, a corrections officer, to investigate and do any necessary interviews. Captain Agis addressed a memo, dated August 12, 2004, to both Dumond and Whitmore in which he described the August 11th allegations as "troubling" and provided additional information about a prior 2003 investigation into Pray's interactions with female inmates. As indicated in Agis' memo, this 2003 investigation ultimately ended without substantiating any improper conduct by Pray.[2] Cote and Vitiello were also aware of the prior 2003 investigation into Pray's interactions with a female laundry trusty.

Even after the internal investigation into Pray's August 11th conduct was initiated, Pray was allowed to continue working with the female population at the York County Jail. In fact, Pray's second assault of Woods took place on or around August 13, 2004. On this occasion, Officer Pray came into Woods' cell under the guise of delivering a med slip. While in the cell, Pray gave Woods one or two cigarettes. He then kissed her, fondled her breasts through her clothes and had Woods perform oral sex on him.

Dumond first notified Pray that he was the subject of an internal affairs investigation on August 18, 2004 and it appears that the investigation began in earnest on this day. Between August 18, 2004 and August 27, 2004, Dumond and Whitmore interviewed Woods, Pray and two other female inmates. During Woods' first interview on August 18, 2004, she denied any sexual contact between herself and Pray; Woods did admit that Pray had taken her out of her cell on August 11, 2004 and offered her a soda. Woods spoke with her attorney after this interview and, as a result, asked to meet with the investigators again. Investigators interviewed Woods a

---

[2] To the extent that Plaintiff has attempted to introduce evidence of the actual incidents underlying the 2003 investigation, the Court has determined that the evidence provided in support of those factual assertions is insufficient and contains multiple levels of inadmissible hearsay. (See Pl.'s SMF ¶¶ 10 & 12; Pl.'s Ex. 2.) As a result, the Court's narrative includes no additional details of the 2003 investigation.

4

second time on August 19, 2004. During this second interview, Woods reported that Pray had requested a sex act in exchange for a cigarette on a day in August when she had transferred cells. Woods stated that Pray in fact gave her the cigarette but again denied any sexual contact.

On August 19, 2004 Dumond notified Pray that the internal affairs investigation was being expanded to include allegations beyond those contained in the August 11, 2004 incident reports. This same day Chief Deputy Ouellette placed Pray on administrative leave. The decision to place Pray on leave was made by Sheriff Cote as a result of preliminary findings of the internal affairs investigation.

On August 23, 2004, Dumond interviewed another female inmate who was then housed at the Cumberland County Jail (the "Cumberland inmate").[3] As a result of his interviews of the Cumberland inmate, Dumond uncovered that Pray had actually engaged in unprofessional and illegal conduct with the Cumberland inmate between January 2004 and June 2004 when she was housed at the York County Jail. Pray's interactions with the Cumberland inmate included improper sexual contact and sending multiple letters to the inmate, which were sexually explicit and included a threat against another female inmate.

On August 27, 2004, Dumond interviewed Pray. At the end of that interview, Pray voluntarily resigned and Cote accepted his resignation. As a result of the findings from the internal affairs investigation, the Maine Criminal Justice Academy revoked Pray's Corrections Officer certification. The allegations against Pray were also referred to the Maine Attorney General's Office for possible criminal prosecution.

Pray's interactions and sexual assault of Woods in August 2004 undeniably violated the policies contained in the York County Sheriff's Manual of Policies and Procedures. None of

---

[3] This was actually the second interview of the Cumberland inmate. Dumond had conducted an initial interview with the Cumberland inmate on August 18, 2004.

York County's policies support, condone or encourage jail employees to have sexual or otherwise inappropriate personal contact with inmates.

Following Pray's two assaults of Woods and her meeting with the investigators, Woods became increasingly depressed. On August 26, 2004, Woods was placed on a suicide watch. Ultimately, she was transferred from the York County Jail for the remainder of her period of incarceration. Despite the obvious and understandable impact of the assaults, Woods did not file any inmate grievance in connection with Pray's assaults although York County Jail had an inmate grievance process.

In 2006, while still incarcerated at the Maine Correctional Center in Windham, Woods filed this action. In light of the Court's dismissal of claims against Quinton Pray for failure to complete service, what remains of Plaintiff's Complaint are claims against York County and two individual defendants in both their individual capacities and their official capacities as employees of York County. Specifically, the Complaint names York County Sheriff Philip Cote, who served as the Sheriff for York County from 1999 until 2007. As the Sheriff, Cote was the final decision maker and policy maker for the York County Jail and was responsible for all final decisions regarding policies and procedures at the Jail, including employee training and investigations of alleged misconduct. Second, the Complaint presses claims against Michael Vitiello, who has been employed as the Jail Administrator for the York County Jail since 2000. As to each of these remaining Defendants, Plaintiff claims violations of 42 U.S.C. § 1983 as well as negligent supervision, intentional infliction of emotional distress and negligent infliction of emotional distress.

York County, as well as Cote and Vitiello, in their individual official capacities, (together, "Defendants") are insured through the Maine County Commissioners Association

6

Self-Funded Risk Pool, a public self-funded pool established pursuant to 30-A M.R.S.A. § 117 (the "Risk Pool"). The coverage provided by the Risk Pool explicitly excludes coverage for tort claims that are covered by the Maine Tort Claims Act, 14 M.R.S.A. § 1801 et seq. None of the Defendants have procured any other liability insurance.

### III. DISCUSSION

Defendants' Motion for Summary Judgment ultimately highlights both procedural and substantive problems with Plaintiff's remaining claims against York County, Cote and Vitiello. In the discussion that follows, the Court explains why both these procedural and substantive problems mean Plaintiff cannot recover from these Defendants as a matter of law.

### A. Failure to Exhaust Administrative Remedies

Defendants first argue that the Court should dismiss all of Plaintiff's remaining claims against them because she failed to comply with provisions of the Prison Litigation Reform Act that require anyone confined to a correctional facility to exhaust all available administrative remedies. See 42 U.S.C. § 1997e(a). Plaintiff counters this argument by claiming that failure to exhaust administrative remedies is an affirmative defense and that Defendants waived this defense by failing to correctly assert it in their answer.

Plaintiff is initially correct in her argument in that failure to exhaust administrative remedies is an affirmative defense. See Jones v. Bock, 127 S. Ct. 910, 921 (2007). However, the Court disagrees with Plaintiff as to whether Defendants preserved the defense in their answer. As Defendants acknowledge in their Reply, their pleading contained a typographical error. Due to this error, their assertion of this affirmative defense reads: "Plaintiff's claims are barred by provisions of the Prison Litigation Reform Act, including but not limited to 42 U.S.C. § 1197e(a) and or 42 U.S.C. § 1197e(e)." (Defs.' Answer (Docket # 3) at 2.) Despite the error,

7

the Court believes that this statement gave Plaintiff reasonable notice of Defendants' intention to assert the affirmative defense of failure to exhaust and therefore finds Defendants preserved the affirmative defense.

In order to win summary judgment on the basis of this affirmative defense, Defendants bear the burden of proving its application to Plaintiff's case. In this case, the parties agree that Woods never attempted to file a written grievance in accordance with York County Jail Inmate Handbook. However, Plaintiff claims that the investigation undertaken in response to the four incident reports essentially mirrors the process that would have been undertaken had such a grievance been filed. In addition, the Court notes that as a result of that investigation and Woods' reported depression, she was apparently moved from the facility. Given the result of the internal investigation, one might argue that the filing of an inmate grievance would have been futile in terms of securing Woods any other relief.[4] However, to date, the First Circuit has not recognized a "futility exception" to the exhaustion requirement. See Medina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 35 (1st Cir. 2002) (quoting Massey v. Wheeler, 221 F.3d 1030, 1034 (7th Cir. 2000)); cf. Parker v. Robinson, No. 04-cv-214-B-W, 2006 WL 2904780 at *8-*9 (D. Me. Oct. 10, 2006) (suggesting that the court might consider "particular circumstances of the case when resolving a 42 U.S.C. § 1997e(a) dispute").

While the Court is satisfied that Plaintiff in fact failed to comply with exhaustion requirements of 42 U.S.C. § 1997e(a), a dismissal on these grounds would not necessarily be without prejudice since it would not involve a ruling on the merits. For this reason, the Court believes that the wise course is to address Defendants' other substantive arguments. As the

---

[4] In addition to the internal investigation, Defendants were also notified of the substance of Plaintiff's claims via the February 2005 Notice of Claim she filed. (See Ex. A to Pl.'s Compl.)

discussion that follows shows, failure to exhaust is not the only barrier to Plaintiff's remaining claims.

### B.  Plaintiff's Claims Under 42 U.S.C. § 1983 (Counts II-V)

In separate counts, Plaintiff asserts claims for violation of 42 U.S.C. § 1983 against Vitiello, Cote, York County and York County Jail.[5] The parties do not dispute that Woods had a constitutional right to be free from sexual assault while she was incarcerated at the York County Jail.[6] Nonetheless, there is a dispute as to whether any of the named Defendants can be held responsible for the fact that Woods' rights in this regard were apparently violated by Corrections Officer Pray.

As clarified in Plaintiff's submissions in connection with this Motion, Plaintiff maintains that her remaining § 1983 claims are based upon Defendants' failure to suspend Pray after receiving the August 11, 2004 incident reports and failure to quickly investigate the incident report allegations. Under Plaintiff's theory, these failures contributed to the second assault of Woods on or after August 13, 2004.[7]

   1. *Monell* Liability

The Supreme Court first pronounced that there was no respondeat superior liability under 42 U.S.C. § 1983 for municipalities or other local governmental bodies in Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 689 (1978). Thus, in order to succeed on a § 1983

---

[5] As Defendants correctly point out in their submission, Plaintiff's separately stated claims against the York County Jail are "superfluous" and York County is the properly named Defendant. (See Defs.' Mot. at 13 n.3.)

[6] The summary judgment record is not clear with respect to whether Woods was in pretrial detention or serving a sentence at all times relevant to her claims. Depending on the clarification of this factual question, Woods' claim could be interpreted as invoking a violation of either the Fourteenth Amendment (for pretrial detention) or Eighth Amendment (for serving a sentence). See, e.g., Whitney v. Albers, 475 U.S. 312, 327 (1986)

[7] Defendants' Motion spends some time arguing that Plaintiff cannot establish a "failure to train" claim. Based on Plaintiff's Response, it does not appear that she is pursuing a "failure to train" claim. However, the Court notes that on the record there is no trialworthy issue as to whether York County had a faulty training program with respect to the sexual assault and/or harassment of prisoners. See Calvi v. Knox County, 470 F.3d 422, 429 (1st Cir. 2006).

9

claim against York County, Plaintiff generally must identify a custom or policy that caused her injury. In objecting to the pending Motion, Plaintiff concedes that her § 1983 claims "cannot be sustained under the guise of an official policy or custom." (Pl.'s Response at 11.) However, she suggests that her § 1983 claims are more properly considered as challenging a "pervasive . . . custom and failure to supervise." (Pl.'s Response at 9.)

The Court notes that the factual record simply does not support finding that York County or Cote, as the final decisionmaker, had a *pervasive* custom of failing to adequately investigate allegations of corrections officer misconduct or failing to suspend officers once there was evidence of sexual assault or other serious misconduct.[8] To the extent that Plaintiff posits that such failures occurred here and caused the August 13, 2004 sexual assault, Plaintiff still must prove that these actions were "taken with 'deliberate indifference' as to [their] known or obvious consequences." Board of the County Commissioners of Bryan County v. Brown, 520 U.S. 397, 407 (1997). "'Deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Id. at 410. In this case, the record does not support finding that the decisions made by Cote on August 12, 2004 reflected a disregard for a known or obvious risk that the constitutional rights of Woods (or any other inmate) would be violated. As of August 12, 2004, there was no reported allegation of sexual assault by Pray. Given what was known at the time, Cote's decision to simply initiate an internal investigation without taking further action against Pray did not reflect deliberate indifference. Notably, once the sexual harassment and/or assault allegations were brought to Cote's attention, Cote did place Pray on leave.

---

[8] In this regard, the Court believes this case is factually distinguishable from the record presented in Faas v. Washington County, 260 F. Supp. 2d 198, 206-07 (D. Me. 2003).

Plaintiff also points out that there was a six day gap between Cote's decision to investigate and the completion of any actual interviews. However, given the substance of the allegations contained in the August 11, 2004 incident reports, the Court does not believe this delay reflects deliberate indifference. Moreover, on the issue of whether the delay caused the August 13, 2004 violation of Woods constitutional rights, the Court must acknowledge that Woods refused to disclose any sexual assault or harassment in her first interview with investigators (and she also did not make any attempts to file an inmate grievance in connection with the August 11, 2004 incident). Thus, the record does not suggest that quicker interviews would have necessarily yielded information that would have resulted in the suspension of Pray prior to August 13, 2004.

Based on Plaintiff's failure to establish a trialworthy issue on deliberate indifference, the Court ultimately concludes that York County and Cote, in his official capacity, are entitled to summary judgment on Plaintiff's § 1983 claims.

    2. Qualified Immunity

Defendants next argue that Plaintiff's § 1983 claims against Cote and Vitiello are barred by qualified immunity. Pursuant to First Circuit precedent, "Defendants are entitled to qualified immunity unless '(1) the facts alleged show the defendants' conduct violated a constitutional right, and (2) the contours of this right are 'clearly established' under then-existing law (3) such that a reasonable officer would have known that his conduct was unlawful.'" Berube v. Conley, 506 F.3d 79, 82 (1st Cir. 2007) (quoting Santana v. Calderon, 342 F.3d 18, 23 (1st Cir. 2003)). With respect to supervisory liability and qualified immunity, the inquiry "turns on whether, in the particular circumstances confronted by each [supervisory defendant], that [defendant] should reasonably have understood that his conduct jeopardized [the plaintiff's clearly established]

rights." Camilo-Robles v. Hoyos, 151 F.3d 1, 8 (1st Cir. 1998). Even if a supervisor does not have actual knowledge of the offending behavior, a plaintiff may show that a supervisory defendant is not entitled to qualified immunity if his lack of knowledge was the result of deliberate indifference. Id. at 7.

For purposes of summary judgment, Defendants concede that Pray violated a clearly established right of Plaintiff. In objecting to summary judgment, Plaintiff argues that Cote and Vitiello are not entitled to qualified immunity because "[a] reasonable official would not allow a sexual predator to remain in contact with female inmates during this type of investigation." (Pl.'s Response at 13.) Quite simply, on August 11 & 12, 2004, there was no reason for Cote or Vitiello to know or surmise that Pray was a "sexual predator" or that Pray was violating the constitutional rights of inmates under his supervision at the York County Jail. In the parlance of qualified immunity, a reasonable officer, "similarly situated" to Cote and Vitiello, would not have known that allowing Pray to continue working during the initial stages of the internal investigation into the four incident reports would have resulted in the sexual assault of Woods. Savard v. Rhode Island, 338 F.3d 23, 27 (1st Cir. 2003). Incorporating the Court's previous discussion of deliberate indifference, there is no basis for concluding that either Cote or Vitiello were deliberately indifferent to Woods' rights to be free from sexual assault. See Camilo-Robles, 151 F.3d at 7.

In short, "[q]ualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law,'" the record does not suggest that Cote or Vitiello fall into either of those categories. Camilo-Robles, 151 F.3d at 15 (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). Thus, the Court concludes that both Cote and Vitiello are entitled to the protection

afforded by qualified immunity. On this basis, the Court will grant summary judgment on the § 1983 claims asserted against these two Defendants.

**C.** **Plaintiff's Tort Claims (Counts VII-XI)**

Plaintiff states claims for negligent supervision, intentional inflictions of emotional distress and negligent infliction of emotional distress against all of the remaining Defendants. Having assessed all of the arguments presented by the parties, it is clear that these claims must be dismissed. As to York County and the individual defendants in their respective official capacities, such tort claims are barred by the Maine Tort Claims Act, 14 M.R.S.A. § 8103. Moreover, Plaintiff's claims against Cote and Vitiello as government employees are blocked by discretionary function immunity. See 14 M.R.S.A. § 8111(1)(C); Roberts v. State, 731 A.2d 855, 857-58 (Me. 1999); Ellis v. Meade, 887 F. Supp. 324, 330-31 (D. Me. 1995). Specifically, the Court is satisfied that the decisions involving the conduct of the investigation prompted by the August 11, 2004 incident reports and the August 19, 2004 suspension of Pray involved discretionary functions. Therefore, the Court finds Defendants are entitled to judgment as a matter of law with respect to Counts VII-XI.

**IV. CONCLUSION**

For the reasons explained herein, the Court GRANTS both Defendants' Motion for Summary Judgment (Docket # 17) and Defendants' Motion for Judgment (Docket # 19). In accordance with these rulings, Counts I & VI are dismissed without prejudice and judgment shall enter in favor of Defendants York County, Cote and Vitiello on all other counts.

SO ORDERED.

/s/ George Z. Singal
Chief U.S. District Judge

Dated this 19th day of February, 2008.